# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

GARY L. SOWERS,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

    Defendant.

Case No. 14-CV-435-JED-FHM

## REPORT AND RECOMMENDATION

Plaintiff, Gary L. Sowers, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's January 28, 2012, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held April 29, 2013. By decision dated May 22, 2013, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on May 28, 2014. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 50 years old on the alleged date of onset of disability and 52 on the date of the ALJ's denial decision  He has a general equivalency diploma and formerly worked as a diesel mechanic. He claims to have been unable to work since January 4, 2012 as a result of back pain, depression, panic disorder without agoraphobia, and antisocial personality traits.

## **The ALJ's Decision**

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform lees than the full range of medium work. He can occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds. In an 8-hour workday he can stand/walk at least 6 hours and sit at least 6 hours with normal breaks. He can stoop no more than occasionally. He is limited to simple, repetitive tasks. He can relate to supervisors and co-workers only superficially and he cannot work with the general public. [R. 16].

Although Plaintiff is unable to perform his her past relevant work, based on the testimony of a vocational expert, the ALJ determined that there are a significant number

of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Allegations

Plaintiff asserts that the ALJ failed to properly evaluate, consider, and weigh the medical evidence; the ALJ erred at steps four[2] and five of the sequential evaluation process; and failed to perform a proper credibility analysis.

### Analysis

At the outset, the undersigned points out that throughout his brief, Plaintiff argues for a different conclusion by pointing out information within the medical record which might arguably support a conclusion different from the one reached by the ALJ. Plaintiff asserts that if the ALJ had viewed the evidence as he suggests, the ALJ "could have" come to a different conclusion. [Dkt. 16, pp. 6, 8, 9, 10]. However, to establish error on appeal, the Plaintiff must do more than show that the evidence "could" support a finding of disability. To establish error, the Plaintiff must show that the evidence is so overwhelming that no reasonable ALJ would fail to make the finding Plaintiff asserts is proper. Absent such a showing, the court is bound by the determination made by the ALJ as the finder of fact. "The findings of the Commissioner of Social Security as to any fact, if supported by

---

[2] At step four the ALJ found Plaintiff was unable to perform any past relevant work, a finding in Plaintiff's favor. [R. 19].

substantial evidence, shall be conclusive [.]" 42 U.S.C. § 405(g).[3]  The undersigned finds that Plaintiff has not demonstrated the absence of substantial evidence to support the ALJ's RFC finding.

**Evaluation of the Medical Evidence**

Plaintiff argues the ALJ erred because he stated he gave "great weight" to Dr. Smasal's consultative examination report, [R. 19], but failed to mention or discuss some of the findings contained in the report.  [Dkt. 16, pp. 2-3].  According to Plaintiff, the ALJ was required to mention Plaintiff's reported inability to name a foreign capital, state the temperature at which water boils, or explain why we pay taxes and that Plaintiff appeared anxious, fidgeted, and showed memory impairments.  Further Plaintiff asserts that the ALJ was required to include Dr. Smasal's diagnoses in the severe impairments listed in the decision.

The ALJ is not required to discuss every piece of medical evidence in the record. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  The ALJ stated he carefully considered the entire record.  [R. 16].  The Tenth Circuit has stated it will take the ALJ at his word when the entirety of the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he adequately considered the claimant's impairments.  *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).  The undersigned finds that the ALJ's decision demonstrates he adequately considered Plaintiff's impairments in this case.

---

[3] *See also Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007)(on appeal court reviews only sufficiency of evidence, not its weight); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (court may not reweigh evidence and displace agency choice between two fairly conflicting views, discussing meaning of substantial evidence); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (evidence is insubstantial if it is overwhelmingly contradicted by other evidence).

4

Further, the undersigned finds no error in the ALJ's severity findings. At step two of the evaluative sequence, the ALJ must determine whether Plaintiff suffers from severe impairments. That is all that is required of the ALJ at step two. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ finds that a claimant has at least one severe impairment, a failure to designate others as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1521, 416.921; *see also* 20 C.F.R. §§ 404.1525(e), 416.945(e); *Mariaz v. Sec'y of Health & Human Servs.*, 857 F.2d 240, 244 (6th Cir. 1987), *Brescia v. Astrue*, 2008 WL 2662593 (10th Cir). In this case the ALJ recognized the existence of psychological problems, listing depression, panic disorder, and anti-social personality traits as "severe" impairments at step two of the sequential evaluation. The decision recounted that "Dr. Smasal predicted the claimant would have difficulty in a work environment with persisting in attention and concentration. Plaintiff received a guarded prognosis and diagnoses of Posttraumatic Stress Disorder and Major Depressive Disorder, Recurrent Episodes, Moderate (Exhibit 4F, pages 4-5)." [R. 18, 243]. The undersigned finds that the ALJ's decision demonstrates he fully took Dr. Smasal's findings and opinions into account and included supported functional limitations in the RFC.

In addition, Dr. Smasal's examination report was reviewed and taken into account by the Disability Determination Services (DDS) expert, Ruth Ann Mertens, Ph.D., who rendered an opinion about Plaintiff' mental ability to perform work-related mental activities. [R. 257, 259-261]. The regulations instruct that these consultants are "highly qualified

physicians and psychologists who are also experts in Social Security disability evaluation" whose findings must be considered as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(i); 20 C.F.R. § 416.927(f)(2)(i).  Dr. Mertens found Plaintiff is able to perform simple tasks under routine supervision, he can relate to co-workers and supervisors on a superficial basis for work purposes, and cannot relate to the general public.  [R. 261].  These same restrictions are included in the ALJ's RFC.  [R. 16].  The undersigned finds no error in the ALJ's treatment of Dr. Smasal's evaluation and findings.

Plaintiff argues that Dr. Mertens' finding that Plaintiff can adapt to a work situation is inconsistent with Dr. Smasal's findings.  According to Plaintiff, Dr. Smasal found that Plaintiff could not adapt to a work situation.  Dr. Smasal stated that adapting to changes was one of several areas where Plaintiff was likely to experience difficulty in a work situation.  [R. 243].  However, Dr. Smasal's comment was a broad statement, not one made in consideration of a particular work situation.  On the other hand, Dr. Mertens' conclusion that Plaintiff can adapt to a work situation was made in regard to a particular work situation involving the performance of only simple tasks, only superficial interactions with supervisors and co-workers, and no contact with the public.  [R. 261].  Considered in the proper context, the undersigned sees no inconsistency between Dr. Smasal's findings and the mental RFC assessment completed by Dr. Mertens.

Plaintiff notes that the record contains several Global Assessment of Functioning (GAF)[4] scores and agues that these scores constitute medical opinions that the ALJ was

---

[4] The Global Assessment of Functioning (GAF) score is a subjective rating on a one hundred point scale, divided into ten numerical ranges.  The GAF permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning.  *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders,* 32, 34 (Text Revision 4th ed.2000)("DSM-IV-TR).  The DSM-IV-TR instructs that the GAF scale has two components: the first part covering symptom severity, and the

6

required to analyze and evaluate in accordance with the procedures set out in 20 C.F.R. § 416.927. [Dkt. 16, p. 4]. A low GAF score does not alone determine disability, but is merely a piece of evidence to be considered with the rest of the record. The Tenth Circuit has explained it is not necessary for the ALJ to specifically mention or adopt every GAF score in his decision. *See Luttrell v. Astrue*, 453 Fed.Appx 786, 791–92 (10th Cir.2011), *Butler v. Astrue*, 412 Fed.Appx 144, 147 (10th Cir.2011), *Holcomb v. Astrue*, 389 Fed.Appx. 757, 759 (10th Cir.2010)(GAF scores taken alone do not establish an impairment serious enough to preclude an ability to work and when the scores are the opinion of providers who are not acceptable medical sources, they cannot by themselves establish a medically determinable impairment, constitute a medical opinion, or be considered the opinions of a treating source). Recently, the Tenth Circuit noted that the new Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed.2013) "has discontinued [the use of the GAF score] because of 'its conceptual lack of clarity ... and questionable psychometrics in routine practice.' " *Krchmar v. Colvin*, 548 Fed.Appx. 531, 534 n. 2 (10th Cir.2013) (unpublished). The GAF scores in this case were not linked to any work-related limitations identified in the treatment records. The RFC included restrictions to accommodate the limitations which are supported by substantial evidence. The undersigned finds no error in the ALJ's treatment of the GAF scores.

Plaintiff's brief contains a single sentence wherein Plaintiff points out that the ALJ did not mention the records from the mental health clinic where Plaintiff received treatment.

---

second part covers functioning. If <u>either</u> the symptom severity <u>or</u> the level of functioning falls within the range, a GAF within that range should be assigned. And, where the symptom severity and level of functioning are discordant, the GAF rating should reflect the worse of the two. *Id.* at 32-33.

[Dkt. 16, p. 4]. Plaintiff does not, however, discuss the contents of those records or make any attempt to demonstrate the failure to discuss those records was error.[5]  It is Plaintiff's duty on appeal to support his arguments with references to the record and to tie relevant facts to his legal contentions.  The court will not "sift through" the record to find support for the claimant's arguments.  *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir.1992), *United States v. Rodriguiez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997)(appellants have the burden of tying the relevant facts to their legal contentions and must provide specific reference to the record to carry the burden of proving error).  It is appropriate to view an issue as waived where, as here, the Plaintiff fails to present a developed argument to the court.  *Wall v. Astrue*, 561 F.3d 1048, 1066-1067 (10th Cir. 2009).

Plaintiff makes another assertion that the ALJ erred at step two.  At step two of the evaluative sequence, the ALJ found that Plaintiff had a history of back pain, but the medical evidence does not support a finding of severity for hypertension, hypothyroidism, and history of diverticulitis. [R. 14].  Plaintiff argues that the ALJ erred in characterizing his back pain as being historical.  Plaintiff also argues that he was treated for hypertension, hyperthyroidism, and diverticulitis, so those conditions are medically determinable and their severity should have been assessed.  [Dkt. 16, p. 5].

The undersigned finds no error in the ALJ's treatment of these conditions.  The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis.  *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the

---

[5] The ALJ mentioned the mental health records in a footnote, which indicates he considered them. [R. 18, n.1].

claimant unable to engage in any substantial gainful employment.), *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work), *Scull v Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). Plaintiff has not demonstrated that these conditions affect his ability to perform work related activities.

Plaintiff also seems to argue that the ALJ's RFC findings are not supported by substantial evidence because there is no physical RFC assessment in the record performed by a medical professional. There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); *see also* 20 C.F.R. §§ 404.1546(c) and 416.946(c). The Tenth Circuit has thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949; *see, e.g* ., *Wall v. Astrue,* 561 F.3d 1048, 1068–69 (10th Cir. 2009)(upholding ALJ's findings on mental impairment where record did not contain any treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297,

302-03 (10th Cir.1988) (holding ALJ properly made mental RFC findings without expert medical assistance).

### Step Five Finding

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and the ALJ is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same). The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation of extended duration. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 (C).

Plaintiff argues that the ALJ erred in failing to include the PRT findings of moderate difficulties in social functioning and in concentration, persistence, or pace in the hypothetical questioning of the vocational expert. As the ALJ noted in his decision, the "paragraph B" limitations are not an RFC assessment, rather they rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. [R. 16]. The ALJ stated that the RFC assessment reflects the degree of limitation found in the "paragraph B" mental function analysis. *Id.*

Further, the PRT findings are not expressed in work-related limitations and consequently are not appropriate for inclusion in hypothetical questioning of a vocational expert. *See e.g. Chrismon v. Colvin*, 531 Fed.Appx. 893, 897-898 (10th Cir. 2013)(discussing difference between PRT findings and RFC findings). Rather, it is appropriate to include work-related limitations in the hypothetical questioning, which the ALJ did in this case. Specific work-related mental limitations were expressed in the mental RFC form completed by the state agency Disability Determination Service (DDS) reviewing expert, Dr. Mertens. [R. 259-261]. Those limitations, the ability to perform simple tasks under routine supervision, relate to coworkers and supervisors on a superficial work basis, and no interaction with the general public, were included in hypothetical questioning of the vocational expert, [R. 47], and in the RFC, [R. 16]. Since the ALJ included work-related mental limitations supported by the record, the undersigned finds no error in the ALJ's framing of the mental limitations in the hypothetical question and the RFC.

Plaintiff argues that the decision lacks support by substantial evidence because the vocational expert testified that, where "moderately limited" is defined as 17 to 32 percent of the workday, the jobs identified could not be performed by one with "moderate" limitations in the ability to maintain attention and concentration for extended periods and "moderate" limitations in the ability to accept instructions and respond appropriately to criticism from supervisors. [R. 49-50]. Moderate limitations in these areas were contained in Dr. Mertens' mental RFC assessment. [R. 259-261].

It is an established rule that hypothetical questions to the vocational expert "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (further citations omitted). It is evident that the

11

ALJ did not accept the definition of "moderate" forwarded by Plaintiff. Further, there is no indication that Dr. Mertens rendered her opinion with that definition in mind. In fact, Dr. Mertens' assessment evinces her opinion that Plaintiff had the ability to perform work. [R. 261]. Moreover, Plaintiff has not cited to any authoritative source (e.g. regulations or case law) to establish the definition of "moderate" Plaintiff proposes.

The undersigned rejects Plaintiff's argument that common sense dictates that a limitation to occasional stooping requires a similar limitation on bending, squatting, crouching, and crawling. [Dkt. 16, p. 8]. *Social Security Ruling* (SSR) 96-8p, 1996 WL 374184, at *3, provides that where the record does not support a limitation, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity. The undersigned also rejects Plaintiff's assertion that the RFC should have included limitations on the ability to use his hands and arms. Plaintiff has not demonstrated that the record requires the inclusion of such limitations.

The undersigned finds that the ALJ's hypothetical questioning of the vocational expert and the RFC finding are supported by substantial evidence and that the ALJ's narrative discussion of the RFC is sufficient. Plaintiff offers arguments for a different conclusion. The undersigned views those arguments as an invitation to engage in impermissible reweighing of the evidence. As the Tenth Circuit has instructed, the court must decline that invitation. *See Rabon v. Astrue*, 464 Fed. Appx. 732, 735-36 (10th Cir. 2012)(citing *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)).

**Credibility Analysis**

The ALJ explained his reasons for discounting Plaintiff's allegations, including the objective medical evidence, Plaintiff's denial of any problems walking recorded in doctor's records, notations of normal posture and gait, Plaintiff's ability to work previously with some of the problems complained of, inconsistent information provided by Plaintiff to medical care personnel, and incredulity of Plaintiff's apparent inability to name any US president prior to 1950 or to articulate a reason for paying taxes. [R. 18-19]. Because the ALJ properly linked his credibility finding to the record, the undersigned finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determinations. See *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(factors to be considered by ALJ in assessing credibility to include extensiveness of attempts, medical or nonmedical to obtain relief and frequency of medical contacts); *James v. Chater,* 96 F.3d 1341, 1342 (10th Cir. 1996) (witness credibility is province of Commissioner whose judgment is entitled to considerable deference).

There is no merit to Plaintiff's assertion that the ALJ failed to properly evaluate the Third Party Function Report completed by Barbara Rodman.[6] The ALJ noted the existence of this evidence and stated he accorded it little weight because "her descriptions of the claimant's supposed mental and physical limitations have no parallels in the medical reports." [R. 19]. The undersigned finds that the ALJ's decision demonstrates he considered this evidence as required by the regulations. *See* 20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3); *Social Security Ruling* (SSR) 06-03p, 2006 WL 2263437.

---

[6] Plaintiff cites to "*Hopper* at *4-5" in support of his assertion. [Dkt. 16, p. 10]. Plaintiff's citation is insufficient to enable the court to locate this authority.

## Conclusion

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before October 14, 2015.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 1st day of October, 2015.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE